UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRETT B.,

Plaintiff,

v.

3:25-CV-00947 (ML)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

LACHMAN, GORTON LAW FIRM
Counsel for the Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13760-0089

PETER A. GORTON, ESQ.

SOCIAL SECURITY ADMINISTRATION
Counsel for the Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

VERNON NORWOOD, ESQ.
Special Assistant U.S. Attorney

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER**

Currently pending before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

heard in connection with those motions on September 2, 2026, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is GRANTED, insofar as for further development of the record and remand for further administrative proceedings.

2) Defendant's motion for judgment on the pleadings (Dkt. No. 12) is DENIED.

3) The Commissioner's decision denying Plaintiff Social Security benefits is REVERSED.

4) This matter is REMANDED to the Commissioner, without a directed finding of disability, for further administrative proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g).

5) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, REMANDING this matter to the Commissioner for further administrative

proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

Dated: September 4, 2026
Binghamton, New York

Miroslav Lovric
United States Magistrate Judge
Northern District of New York

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

BRETT B.,

Plaintiff,

-v- 25-CV-947

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

-------------------------------------------------------x

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE MIROSLAV LOVRIC**
September 2, 2026
15 Henry Street, Binghamton, NY 13901

For the Plaintiff:

LACHMAN & GORTON LAW OFFICE
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
BY: **PETER A. GORTON, ESQ.**

For the Defendant:

SOCIAL SECURITY ADMINISTRATION
26 Federal Plaza
Room 3904
New York, New York 10278
BY: **VERNON NORWOOD, ESQ.**

*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

(The Court and all parties present be video. Time noted: 12:39 p.m.)

THE COURT: All right. The Court's going to begin its decision and reasoning as follows: So first of all, plaintiff has commenced this proceeding pursuant to Title 42, U.S. Code 405(g) to challenge the adverse determination by the Commissioner of Social Security finding that plaintiff was not disabled at the relevant times and, therefore, ineligible for the benefits that he sought.

By way of background, the Court notes as follows: Plaintiff was born in 1993. He is currently approximately 32 years of age. He was approximately 29 years of age on the date of his application for benefits. Plaintiff stands approximately 6'2" and weighs approximately 230 pounds.

Plaintiff is a high school graduate who attended regular education classes, and subsequently served in the United States Army Reserves. His history includes work as a dishwasher in a restaurant, landscaper, laborer in several manufacturing or warehouse-type facilities, and stadium parking lot attendant. Plaintiff did not remain in any of these positions for very long, which he attributed to a combination of his mental health impairments, his lack of stable housing, and transportation issues.

At the time of his administrative hearing on January 14th of 2025, plaintiff was homeless and living in a

motel as part of an emergency housing program. He testified that he had been living in a series of motels for approximately the last six months and had only been housed in his current location for a few days. At other times, plaintiff stayed with friends or slept outside in a tent.

When plaintiff was 17 years of age, his father committed suicide. Plaintiff attributed his diagnosed posttraumatic stress disorder, also referred to as PTSD, and related mental health symptoms to this tragedy. The available record documents anxiety, depression, and signs of potential schizophrenia, including visual hallucinations, and delusions of being watched or having others tamper with his food, clothes, and other belongings.

The record shows three separate psychiatric hospitalizations of extended duration, that being: First, December 21, 2023, to January 2, 2024; next, August 26th to August 29th of 2024; and then thirdly, from September 15, 2025, to October 9, 2025. At least one of these hospitalizations required an emergency involuntary psychiatric hold due to plaintiff's perceived potential to harm himself or others.

Procedurally, the Court notes as follows, plaintiff protectively -- and let me just clarify. I think I got one of those dates wrong. So I believe it was September 15th of 2024 to October 9th of 2024. I think I said '25 on one of those years. I apologize.

Procedurally, plaintiff protectively filed for Title II and Title XVI benefits on March 28th of 2023, alleging an onset date of September 1st of 2021.

In support of his application for benefits, plaintiff claimed disability based on a number of physical and mental health impairments, including PTSD, depression, degenerative disc disease, knee and foot injuries, and asthma.

Administrative Law Judge Mary Jane Pelton conducted a hearing on January 14th of 2025, to address plaintiff's applications for benefits.

ALJ Pelton issued an unfavorable decision on April 17th of 2025. That decision became the final determination of the agency on May 23, 2025, when the Appeals Council denied plaintiff's request for review.

This action was commenced on July 18th of 2025 and it is timely.

In her April 17, 2025, decision at issue in this case, the ALJ determined that plaintiff met the insured status requirements through September 30th of 2022, and then the ALJ utilized the familiar five step test for determining disability.

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 1, 2021.

At step two, the ALJ concluded that plaintiff had the following severe impairments: Depressive disorder,

schizoaffective disorder, schizophrenia, stimulant use disorder, and posttraumatic stress disorder.

At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. In making this determination, the ALJ expressly considered listings 12.04, dealing with depressive, bipolar, and related disorders; 12.08, dealing with personality and impulse control disorders; and listing 12.15, dealing with trauma and stressor-related disorders.

Next, the ALJ determined that plaintiff has the residual functional capacity, also referred to as RFC, to perform the full range of work at all exertional levels, but with certain nonexertional limitations related to his mental health. Specifically, the ALJ found plaintiff can understand, remember, and carry out simple instructions and can use judgment to make simple work-related decisions. The ALJ also indicated that plaintiff should work in a job with occasional changes in the routine work setting; cannot perform work requiring a specific production rate or perform work which requires hourly quotas; and the ALJ noted or stated plaintiff could have occasional interaction with coworkers and supervisors, but no interaction with the public.

At step four, the ALJ determined that plaintiff did not have any past relevant work.

At step five, the ALJ relied on the vocational expert testimony to find that, considering plaintiff's age, education, work experience, and RFC, that there were jobs existing in significant numbers in the national economy that plaintiff can perform.

Accordingly, the ALJ found that plaintiff was not disabled from his alleged onset date of September 1, 2021, through the date of the ALJ's decision.

Turning now to the plaintiff's arguments.

So the Court begins by articulating that as you know, this Court's functional role in this case is limited and extremely deferential. The Court must determine whether correct legal principles were applied and whether the determination is supported by substantial evidence, which is defined as such relevant evidence as a reasonable mind would find sufficient to support a conclusion, as the Second Circuit noted in the case *Brault v. Commissioner of Social Security,* found at 683 F.3d 443. That's a 2012 Second Circuit case. Therein, the Circuit indicated that this standard is demanding, more so than the clearly erroneous standard. The Court also in *Brault* noted that once there's a finding of fact, that fact can be rejected only if a reasonable factfinder would have to conclude otherwise.

Plaintiff raises four related contentions in this proceeding.

First, plaintiff argues that the ALJ erred in

evaluating the medical opinion evidence, particularly that regarding time off-task and potential absenteeism, by failing to adequately consider the impact of plaintiff's three separate psychiatric hospitalizations in a little over a year.

Secondly, plaintiff argues the ALJ failed to include appropriate restrictions on social interaction and handling stress in the RFC determination.

Third, the plaintiff argues that the ALJ improperly discounted plaintiff's testimony regarding the functional limitations imposed by his mental health impairments because treatment notes reference plaintiff's plans to apply for disability benefits.

And then fourth, the plaintiff argues that the ALJ held plaintiff's noncompliance with recommended treatment and prescribed psychiatric medication against him without taking into account the valid reasons for that noncompliance.

Lastly, plaintiff also argues in his brief and further contends that the ALJ's errors are so significant that remand for calculation of benefits is appropriate.

The Court begins its analysis and reasoning as follows: So this Court finds that remand for further administrative proceedings is required to properly evaluate the medical opinion evidence and to adequately develop the record regarding plaintiff's mental health treatment, particularly his multiple psychiatric hospitalizations, for the following

reasons: Dr. Sara Long conducted a consultative psychiatric evaluation of plaintiff on July 25th of 2023. Based on her examination, Dr. Long opined that plaintiff had no limitations in understanding simple and complex directions, interacting adequately with others, maintaining attention and concentration, or maintaining a regular schedule. She opined that plaintiff had mild to moderate limitations regulating his emotions, but no limitations controlling his behavior, maintaining personal hygiene, and being aware of ordinary workplace hazards.

The ALJ deemed Dr. Long's opinion to be "somewhat persuasive," based on her programmatic expertise, her in-person examination of plaintiff, and the generally "benign" mental status examination results. The ALJ discounted Dr. Long's decision somewhat because "the fully developed record" showed plaintiff "had psychiatric admissions during the period at issue, albeit in the context of medication noncompliance."

Indeed, the record shows that plaintiff was hospitalized on three separate occasions for psychiatric issues, but the ALJ's analysis of these incidents is limited.

For example, the ALJ summarizes a "psychiatric admission from December 21, 2023, until January 2nd of 2024, due to complaint of suicidal ideation," but does not mention that police brought plaintiff to the hospital in handcuffs due to concerns that he may harm himself or others.

Similarly, the ALJ's decision refers to plaintiff's

"psychiatric admission from August 26th of 2024 through August 29th of 2024" for "unspecified psychosis," but does not mention that hospital psychiatrists deemed plaintiff "not safe to be discharged back home," and elected to admit him on an involuntary psychiatric hold pursuant to New York Mental Hygiene Law Section 9.39.

The ALJ also recognized that "reference is made in the record to a psychiatric admission from September 15th of 2024 through October 9th of 2024 for treatment of paranoid schizophrenia." However, the record before the ALJ and before this Court only contains October 2024 records of a follow-up appointment with plaintiff's primary care provider after this psychiatric hospitalization lasting more than three weeks. The actual hospital records are not in the administrative record, and it is unclear to this Court what efforts were made by the ALJ or otherwise to obtain documents that are likely to be both voluminous and relevant.

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. See *Vincent v. Commissioner*, 651 F.3d 299 at page 305. That's a Second Circuit 2011 case. And therein, the Circuit articulated, "the duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the

facts and develop the arguments both for and against the granting of benefits." "Moreover, the ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." See case of *Tammy H v. Commissioner.* That's at 18-CV-851 and that is a Magistrate Judge Baxter case in the Northern District. It's found at 2019 WL 4142639 at page 10. And that's a Northern District of New York August 30, 2019, case.

Whether the ALJ has satisfied her duty to develop the record is a threshold question. See *Matthew D v. Commissioner*, 20-CV-793. That is a district court case by Thomas J. McAvoy found at 2021 WL 1439669 at page 6. And that's a Northern District of New York case of April 16th of 2021. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S. Code 405(g), "the Court must first be satisfied that the ALJ provided plaintiff with a 'full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."

This Court notes that the ALJ did not wholly neglect her duty to develop the record. For example, the ALJ allowed plaintiff an opportunity to supplement the post-hearing record with the independent psychological assessment of Dr. Sean O'Hagen.

Still, the ALJ's limited discussion of plaintiff's

multiple extended psychiatric hospitalizations and the lack of any substantive records describing plaintiff's more than three-week psychiatric hospitalization in September and October of 2024 necessarily impacted the ALJ's evaluation of the supportability and the consistency of the mental health opinions, as well as this Court's ability to assess whether such evaluation was supported by substantial evidence.

Without delving into the substance of all the medical opinion evidence, this Court notes that Dr. Long and the non-examining state agency consultants, whose opinions predated any of these hospitalizations, found no more than moderate limitations in any functional area. In contrast, Dr. O'Hagen and plaintiff's primary care physician, who were more familiar with plaintiff's subsequent psychiatric treatment history, offered a much more restrictive -- offered much more restrictive opinions.

Thus, the ALJ's failure to make affirmative efforts to obtain plaintiff's full psychiatric hospitalization records and to meaningfully address those records almost certainly impacted her RFC determination and ultimate disability decision, and this Court cannot consider it to be harmless error.

Because such issues are likely to be repeated on remand, this Court will briefly address two of plaintiff's other arguments, regarding noncompliance with recommended treatment and the ALJ's discounting of plaintiff's subjective testimony

due to plaintiff's discussion of his benefits applications with his medical providers.

In her brief discussion of plaintiff's hospitalizations, the ALJ described them as occurring "in the context of medication noncompliance."

While an ALJ may discount a plaintiff's description of their symptoms due to their failure to comply with recommended treatment, the ALJ should only do so after considering possible reasons for that noncompliance. Here, the record suggests a number of factors, including plaintiff's lack of housing and transportation and the potential severity of his delusions and paranoia that may have impacted his ability to start and follow recommended treatment. On remand, these factors should be considered if noncompliance is a factor in the disability determination.

In summarizing plaintiff's treatment notes, the ALJ cited a May 2023 appointment with plaintiff's primary care provider during which plaintiff inquired about disability benefits due to mental health issues and chronic musculoskeletal injuries. The ALJ interpreted these comments "to suggest that the claimant sought treatment for purposes of secondary gain rather than symptom relief." The ALJ cites no other evidence that plaintiff is malingering or exaggerating his symptoms.

The most in-depth discussion on this topic comes from the Ninth Circuit Court of Appeals in case *Reinertson v.*

*Barnhart*. That's 127 F. App'x 285, a Ninth Circuit 2005 case. And therein, the Court discussed that the ALJ suggested that a single mother with no other income had a financial motive to exaggerate her symptoms. In finding this conclusion unsupported by substantial evidence, the *Reinertson* court urged the Commissioner to exercise caution, because "it is difficult to see how any claimant could be found credible" if the ALJ could discount testimony because of the individual's "genuine financial need for the benefits" he or she is seeking.

On remand, such caution is advised here. While various treatment records reflect plaintiff's interest in applying for benefits, such interest would appear reasonable for an individual who has been living in a tent in Upstate New York for an extended period of time. Without more, such statements do not reflect on his disability status.

Plaintiff's remaining arguments address specific details of the ALJ's evaluation of the mental health opinion evidence, including plaintiff's ability to remain on task, maintain regular attendance, handle stress, and interact with coworkers and supervisors. Because the required efforts to further develop the record on remand will necessarily impact the ALJ's evaluation of these issues, this Court declines to address these arguments.

Finally, plaintiff contends that the sheer number and duration of plaintiff's psychiatric hospitalizations

conclusively demonstrate plaintiff's inability to work and requests remanded solely for calculation of benefits. However, where there are gaps in the record, like the missing hospitalization records in this case, remand for further administrative proceedings is the overwhelmingly preferred course. See case of *Garces v. Commissioner*. That's at 21-1075-CV. And that is a 2022 WL case at 4350109 at page 1. And that is a Second Circuit September 20, 2022, case. Since further development of the record is necessary in this case, remand for further administrative proceedings is the appropriate remedy.

So based on all of this and accordingly, the plaintiff's motion for judgment on the pleadings is granted for further development of the record and remand for further administrative proceedings; defendant's motion for judgment on the pleadings is denied; and this matter is reversed and remanded to the Commissioner pursuant to sentence four of Title 42 U.S. Code Section 405(g) for further proceedings consistent with this decision and order.

(Time noted: 1:02 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 3rd day of September, 2026.

s/ Hannah F. Cavanaugh

HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

Official U.S. Court Reporter